## WILLIAM FETTYPLACE *et al. versus* DANIEL DUTCH.

An attachment of personal property on *mesne process constitutes a lien, the general property remaining in the owner, and if the owner can, without a trespass, make an actual delivery of the property subject to the lien, a sale with such delivery will vest the property in the vendee, subject to the lien, so as to give him a prior title to that of a subsequent attaching creditor.*

Where wood and lumber lying on a wharf were attached on mesne process and placed by the officer under the care of a keeper, and on a Sunday morning the keeper went away from the wharf and returned in the afternoon, having in the mean time secured the property in the manner in which it was usually done on Sundays, by fastening the gates of the wharf, it was *held* that there was no neglect on the part of the keeper whereby the attachment was dissolved.

Where the keeper permitted the general owner to resume the possession for the purpose of *making a delivery to a vendee subject to the attachment, it was held that the attachment was not dissolved, and that upon such delivery the title of the vendee became valid against a subsequent attaching creditor.*

ASSUMPSIT for money had and received. Trial before *Putnam* J., upon the general issue.

It was proved, that on Saturday, July 18, 1829, in the forenoon, the wood, lumber and other personal property of Zenas Stoddard, wood-wharfinger, on the wharf in his occupation, were attached by the defendant Dutch, a deputy sheriff, on a writ of one Buffum against Stoddard, and that Dutch appointed one Nesmith to be the keeper of the property attached. Nesmith was directed by the officer to keep the attachment as private as he could, but he was to remain near the property, so that if another officer should come to attach it, he might give him notice of the attachment already made. After 12 o'clock on Saturday night, Nesmith shut the large gate of the wharf, and locked it and took the key, and shut the small gate, (which had no lock, but was blocked up with posts on each side,) and went home. Most of the property was on the wharf, but there was some large timber outside the fence. Nesmith, without permission, suffered two or three sticks of timber to go to customers, to oblige them, thinking that if there should be any difficulty about these sticks he would pay for them himself. Nesmith went again to the wharf on Sunday, after dinner. At about half past 11 o'clock on Sunday night, Devereux (one of the plaintiffs) and Stoddard came to the wharf, and Devereux told Nesmith that Stod-

dard had assigned all the property to the plaintiffs ; and he showed Nesmith the deed of assignment, (which was founded on a valid consideration,) and requested him to keep the property for the plaintiffs, subject to the attachment of Buffum, which Devereux agreed to remove by satisfying Buffum's demand.   About 15 minutes before 12 o'clock, Stoddard delivered the property to Devereux, by putting a stick of the wood into his hands as for the whole, and Devereux then delivered it in the same way to Nesmith, to keep for the plaintiffs.   Very soon afterwards Brown, a deputy sheriff, and one Rideout came to the wharf and informed Nesmith that the property would be attached immediately after 12, at the suit of Rideout ; and Nesmith told them that it had been assigned to the plaintiffs, and that possession had been taken. Immediately after 12 o'clock Stoddard again delivered the property to Devereux, and Devereux again delivered it to Nesmith, in the form above mentioned, to keep for the plaintiffs, subject to Buffum's attachment ; and notifications of the assignment were immediately posted up.   Dutch gave Nesmith no authority to deliver up the possession to any person. He authorized Nesmith to go home on Sunday and leave the property as it was left on that day.   The wharf was left as safe as Stoddard used to leave it on Sundays.   It was accessible directly from the water.   Immediately after 12 o'clock on Sunday night Dutch made an attachment of the property on two writs, one in favor of Rideout, the other in favor of one Webster, by entering the attachment on the writs, but without an actual taking of the property into possession anew.   At that time he had received no information of the assignment to the plaintiffs.   By consent of the parties the property was put into the hands of Pickering Dodge, to be sold and accounted for.   Buffum's demand was paid out of the proceeds, and a balance remained, which was paid over to Dutch, and to recover which this action was brought. This balance was demanded of him by the plaintiffs before the commencement of the action.

The jury found that Nesmith and the plaintiffs, at the time of the delivery of the property, did not agree that the first attachment should then be dissolved and extinguished, upon

33 *

the personal promise of Devereux, but that they did agree that the plaintiffs should take the property subject to that attachment.

Judgment was by consent entered up for the plaintiffs, subject to the opinion of the whole Court upon the facts in the case.

*Nov. 6th.*   *Choate* and *Huntington*, for the defendant.   The plaintiffs could not maintain this action, even if there had been no attachment subsequent to the assignment, for after the first attachment no interest assignable at law remained in the debtor.   That attachment vested in the officer not a special property merely, but the whole property, so that the debtor could make no delivery under the assignment.   It was like a mortgage, rather than a lien.   The debtor had a conditional right of re-acquisition, a chose in action against the officer, which was assignable in equity only, and the officer might set up the same defence against the assignee as against the debtor himself.   The officer, and not the debtor, could have maintained an action of trespass against a wrongdoer, for an injury to the property.   Bac. Abr. *Grant, D* ; Shep. Touch. 239 ; Powell on Contr. 153 ; Com. Dig. *Assignment, C* ; *Jones v. Smith,* 2 Ves. Jun. 378 ; Yelv. (Metcalf's edit.) 179, note ; *Ryall* v. *Rolle,* 1 Atk. 165 ; Roberts on Fr. Conv. 558, note ; *Perley* v. *Foster,* 9 Mass. R. 112 ; *Ladd* v. *North,* 2 Mass. R. 517 ; 2 Wms's Saund. 47 *a* ; 2 Kent's Com. 449, 452 ; *Rorke* v. *Dayrell,* 4 T. R. 402.

But by reason of the subsequent attachments the action cannot be sustained.   An attachment confers and imposes on the officer various rights, duties and responsibilities.   He is to account to the debtor for the surplus remaining in his hands after satisfying the attaching creditor's demand, and is not to be turned over to the debtor's appointee to make a settlement with him.   He is not subject to a process of foreign attachment for property taken by him by virtue of his office.   He has a right to hold attached property, not only for the benefit of the attaching creditor, but also that he may make new attachments of the same property for the benefit of other creditors.   In the present case, if Dutch had not made the attachments in favor of Rideout and Webster, he would have

rendered himself liable for neglect of duty.  Should effect be given to the assignment, he would be deprived of his right to make new attachments.  *Wilder* v. *Bailey*, 3 Mass. R. 295 ; *Chealy* v. *Brewer*, 7 Mass. R. 259 ; *Brooks* v. *Cook*, 8 Mass. R. 246 ; *Staples* v. *Staples*, 4 Greenl. 532 ; *Benson* v. *Flower*, Cro. Car. 166, 176 ; *Harrington* v. *Ward*, 9 Mass. R. 251 ; *Vinton* v. *Bradford*, 13 Mass. R. 117.  Here was a possession united to the title of Dutch, which gave him a preference over the plaintiffs.  They took no possession, for the debtor had no possession, nor right of possession, and therefore could make no delivery ; and Nesmith could not make nor assent to a delivery, because he was the special agent of Dutch to preserve the attachment, and any further act on his part would have exceeded his authority and would not have been binding on Dutch.  He might have neglected to preserve the attachment and in that way have affected the rights of Dutch, but the case shows that he did preserve the attachment.  *Lanfear* v. *Sumner*, 17 Mass. R. 110 ; *Lamb* v. *Durant*, 12 Mass. R. 54 ; *Poole* v. *Symonds*, 1 New Hampsh. R. 291 ; *Lane* v. *Jackson*, 5 Mass. R. 164 ; *Watson* v. *Todd*, ibid. 271 ; *Vinton* v. *Bradford*, 13 Mass. R. 114 ; *Odiorne* v. *Colley*, 2 New Hampsh. R. 69.

*Saltonstall* and *Shillaber*, for the plaintiffs.  The attachment made on Saturday was not valid, or at most it was but momentary, the injunction of secrecy making it ineffectual.

But if it was well made and continued in force during Saturday, it was dissolved on Sunday morning.  Nesmith relinquished his possession of the property, by leaving the wharf insufficiently secured, and taking no measures to give notice of the attachment.

But supposing it to have been in force until Sunday night, it was then vacated, when Nesmith voluntarily permitted the debtor to make an actual delivery of the property to the assignees.

If however the attachment was not vacated, and possession could not be given by the debtor to the assignees, still the debtor had an assignable interest.  The officer had but a lien, the general property remaining in the debtor.  If the assignees could not obtain a right to the property itself, they

*Fettyplace v. Dutch*

might acquire a right to the surplus of the proceeds ; to recover which is the object of this action. *Blake* v. *Shaw*, 7 Mass. R. 505 ; *Whittier* v. *Smith*, 11 Mass. R. 211 ; *Ludden* v. *Leavitt*, 9 Mass. R. 105 ; *Bigelow* v. *Willson*, 1 Pick. 485 ; *Brownell* v. *Manchester*, ibid. 232 ; *Thompson* v. *Clerk*, Cro. Eliz. 504 ; *Dillenback* v. *Jerome*, 7 Cowen, 295 ; *Gibbs* v. *Chase*, 10 Mass. R. 125 ; Story · on Bailm. § 135, 350 ; 4 Kent's Com. 188.

*Per Curiam.* An attachment constitutes a lien, and as the general property remains in the owner subject to such lien, if the general owner can, without a trespass, make actual delivery of the property, subject to the lien created by the attachment, a sale with such delivery is lawful, and will vest the property in the vendee, subject to such attachment, so as to give the vendee a prior title to that of a subsequent attaching creditor.

We cannot perceive in the several exceptions taken by the plaintiffs, that the attachment made on Saturday, in behalf of Buffum, was abandoned or vacated, by any act or neglect of Nesmith the keeper.

But supposing the attachment valid, the property being kept on the debtor's own premises, by a license from him to the officer, his own right of access to the property was not prevented or defeated by that license, and therefore he had still a qualified possession, subject to that of the officer and his keeper for all purposes necessary to give effect to the attachment, and therefore his actual delivery vested the property in his assignee, subject to the existing lien created by the attachment.

Under the circumstances of the present case, the Court are of opinion, that although the keeper was not an agent having any authority to give effect to the assignment by his assent, or to dissolve or vacate the attachment by any act of his, yet as Stoddard, the general owner, did, through his acquiescence, resume a qualified possession of the property, so as to be enabled to give actual possession to the assignees, subject to the existing lien created by the attachment, 't becomes unnecessary to consider what would have been the effect had he insisted upon maintaining the exclusive

possession, and refused to permit Stoddard to make such actual delivery.

It follows as a necessary consequence, that the assignment being made *bonâ fide* and for a valuable and adequate consideration, and completed by an actual delivery before the attachments made by Dutch in behalf of Rideout and Webster, the assignment took precedence of those attachments and rendered them nugatory as against the plaintiffs.

Under the agreement of the parties, the judgment entered by consent for the plaintiffs, subject to the opinion of the Court upon the points reserved, must stand affirmed.